ELLA L. GRAY,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        ORDER
                                       )
WALMART STORES, INC.,                  )
                                       )
                    Defendant.         )

        This matter is before the court on the 8 December 2010 motion to dismiss filed by

defendant Walmart Stores, Inc. ("Walmart").[1]  Also before the court are two motions filed by

plaintiff Ella L. Gray ("plaintiff").  The period to respond and reply to these motions has elapsed,

and the matters are now ripe for disposition.

## I.  BACKGROUND

        Plaintiff is a current employee of Walmart Store # 1392 in Wilmington, North Carolina.

On 29 April 2010, plaintiff filed a charge of employment discrimination against Walmart with

the Equal Employment Opportunity Commission ("EEOC").  (EEOC charge, DE # 4-2, at 36.)

On 4 June 2010, the EEOC mailed plaintiff a right-to-sue letter, which concluded that the facts

alleged in the charge failed to state a claim under any of the statutes enforced by the EEOC.

(Dismissal & Notice of Rights, DE # 4-1, at 1.)

        On 2 September 2010, plaintiff commenced this action by filing a motion to proceed in

forma pauperis, and she attached her complaint to the motion.  The complaint is a fill-in-the-

_____

        [1] Walmart states that the complaint improperly identifies Walmart Stores, Inc. as the defendant in this
lawsuit.  The appropriate entity in this action is Wal-Mart Stores East, L.P., which is the operating entity for the
store at issue in this case, i.e., Walmart Store # 1392 in Wilmington, North Carolina.  (Mem. Supp. Mot. Dismiss,
DE # 12, at 1 n.1.)

blank typewritten form that the court makes available for use by *pro se* litigants. The typewritten form has been supplemented with handwritten information by the plaintiff. In her complaint, plaintiff alleges that she has been (1) denied equal pay/work, demoted, and generally harassed; (2) discriminated against because of her age, national origin, race, and disability; and (3) retaliated against for complaining of the alleged discrimination, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). (Compl., DE # 4, ¶¶ 3-4, 6.)

On 8 December 2010, Walmart filed a motion to dismiss the complaint. (DE # 11.) On 16 December 2010, plaintiff filed a motion to proceed with the complaint, to request 24-hour surveillance of the work operations on the sales floor and the processing areas of Walmart Store # 1392, and to request the North Carolina Department of Labor and the Occupational Safety and Health Administration to conduct an analysis of chemicals in certain areas of the store. (DE # 14.) On 10 January 2011, Walmart filed a response to the 16 December 2010 motion. (DE # 18.) On 4 February 2011, plaintiff filed another motion pursuant to which she made a number of requests to the court. (DE # 21.) Walmart did not file a response to this motion.

## II. DISCUSSION

A.    Standard of Review

Plaintiff is proceeding *pro se*. Pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520 (1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. See id.; Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

2

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of the allegations in the complaint. In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Although plausibility does not entail probability, the facts in the complaint must establish more than the mere possibility that a defendant acted unlawfully. Id. In considering whether the plaintiff has established a plausible claim for relief, this court is bound to accept the well-pleaded facts of the complaint as true; however, conclusory assertions of law or fact are not entitled to the assumption of truth. Id. at 1949-50; see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009). In sum, "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a [plausible] claim for relief." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (emphasis in original).

B.     Plaintiff's Motions

In this case, plaintiff did not file a formal response to Walmart's 8 December 2010 motion to dismiss. Instead, she filed a motion to proceed with the complaint on 16 December 2010. (Pl.'s Mot. Proceed, DE # 14.) However, upon reading plaintiff's motion to proceed, it is clear that she intended Section I of her motion to be a response to Walmart's motion to dismiss.

3

(Id. at 1-11.)  Because the court has a duty to construe *pro se* pleadings liberally, see Haines, 404 U.S. at 520, Section I of plaintiff's motion to proceed will therefore be construed as a response to the motion to dismiss.

In Section II of the 16 December 2010 motion to proceed, plaintiff requests 24-hour surveillance of the work operations on the sales floor and the back room processing area of Walmart Store # 1392.  (Pl.'s Mot. Proceed, DE # 14, at 11-13.)  In addition, in Section III of the motion, plaintiff asks the court to order the North Carolina Department of Labor and the Occupational Safety and Health Administration to conduct a chemical analysis of the same areas of the store mentioned in her request for surveillance.  (Id. at 13-15.)  Plaintiff does not cite to any authority which would allow the court to grant her the relief she seeks.  The court also notes that the request made in Section III of the motion relates to entities that are not parties to this case.  Assuming for the sake of argument that the court does have the authority to grant plaintiff's requests, such authority would be discretionary.  The court concludes that it would be inappropriate to order the relief that plaintiff seeks.  As a result, the requests contained in Sections II and III of her 16 December 2010 motion will be denied.

Plaintiff filed another motion in this case on 4 February 2011.  (DE # 21.)  In this motion, plaintiff requests that the court (1) compel the EEOC to respond to and investigate plaintiff's second charge of discrimination; (2) grant plaintiff an extension of time to seek legal representation; (3) compel Walmart to cease retaliation and harassment or provide immediate unemployment benefits to plaintiff; (4) order Walmart to compel Merrill Lynch to release company-contributed 401(k) benefits to plaintiff immediately; and (5) ask the Social Security Administration to disclose all actions taken with respect to plaintiff's application for disability

4

benefits. As with the 16 December 2010 motion, plaintiff cites no authority in support of her

motion, and several of plaintiff's requests relate to entities who are not parties to this case. All

of plaintiff's requests are inappropriate and will be denied. Furthermore, to the extent that both

of plaintiff's motions seek injunctive relief, the motions lack merit and are denied. See Winter v.

Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008); Real Truth About Obama, Inc. v.

FEC, 575 F.3d 342, 345-46 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010),

reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (*per curiam*).

C.      Walmart's Motion to Dismiss

        This case presents many of the problems that are typical with *pro se* litigants. Plaintiff

struggles to set forth "a short and plain statement" of her claims showing that she is entitled to

some form of relief. Fed. R. Civ. P. 8(a)(2). Her complaint and the attached exhibits are

difficult to comprehend. Even after reviewing the numerous documents submitted by plaintiff,

her claims and her allegations remain unclear.

        In testing the sufficiency of plaintiff's *pro se* complaint under Federal Rule of Civil

Procedure 12(b)(6), the court has considered all of the allegations in the complaint, plaintiff's

response to Walmart's motion to dismiss as contained in Section I of her motion to proceed with

the complaint, and the attachments to those pleadings. See Fed. R. Civ. P. 10(c) ("A copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.");

Pratt v. Corr. Corp. of Am., 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that the district

court "was required to consider the allegations not only in [the plaintiff's] pro se complaint, but

also in his motion to amend, his response to defendants' motion to dismiss, and the attachments

to those pleadings"); Tate v. Mail Contractors of Am., Inc., No. 3:10-CV-528, 2011 WL

1380016, at \*3 (W.D.N.C. Apr. 12, 2011) ("Mindful that the Court should review the entirety of a pro se plaintiff's record for evidence to support Plaintiff's claims, the Court has examined all of [Plaintiff's] filings" in ruling on the motion to dismiss.); <u>Rush v. Am. Home Mortg., Inc.</u>, No. WMN-07-CV-0854, 2009 WL 4728971, at \*3 (D. Md. Dec. 3, 2009) (the court can consider additional facts alleged in a *pro se* litigant's response brief due to the court's obligation to construe liberally a *pro se* complaint); <u>Donahue v. U.S. Dep't of Justice</u>, 751 F. Supp. 45, 49 (S.D.N.Y. 1990), <u>abrogated on other grounds</u>, <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692 (2004) (concluding that, due to "[t]he Court's duty to adopt a generous attitude when evaluating a *pro se* complaint," it would consider the allegations in the plaintiff's opposition to the motion to dismiss where they were consistent with the allegations in the complaint).

    1. <u>National Origin and Age Discrimination Claims</u>

    In her complaint, plaintiff asserts a national origin claim pursuant to Title VII. (Compl., DE # 4, ¶¶ 3, 6.) Plaintiff also appears to assert an age discrimination claim pursuant to Title VII. (<u>Id.</u>) However, the Fourth Circuit Court of Appeals has held that the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, "provides the exclusive judicial remedy for claims of age discrimination." <u>Zombro v. Baltimore City Police Dep't</u>, 868 F.2d 1364, 1369 (4th Cir. 1989); <u>see</u> <u>also</u> <u>Lightner v. City of Wilmington, N.C.</u>, 498 F. Supp. 2d 802, 809 n.4 (E.D.N.C. 2007), <u>aff'd</u>, 545 F.3d 260 (4th Cir. 2008). Accordingly, the court will consider plaintiff's age discrimination claim under the ADEA.

    "Before a plaintiff may file suit under Title VII or the ADEA, [s]he is required to file a charge of discrimination with the EEOC." <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009). "Th[is] exhaustion requirement ensures that the employer is put on notice of the

alleged violations so that the matter can be resolved out of court if possible."  Miles v. Dell, Inc.,

429 F.3d 480, 491 (4th Cir. 2005).

The scope of a plaintiff's right to file a federal lawsuit under Title VII or the ADEA is

determined by the contents of the EEOC charge.  Jones, 551 F.3d at 300.  Only those

discrimination claims stated in the initial charge, those reasonably related to the initial charge,

and those developed by reasonable investigation of the initial charge may be maintained in a

subsequent civil action.  Id.; see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963

(4th Cir. 1996).  Because lawyers do not typically complete administrative charges, courts

construe the charges liberally.  Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005).

"Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII

[or ADEA] claim deprives the federal courts of subject matter jurisdiction over the claim."

Jones, 551 F.3d at 300.

Here, plaintiff cannot proceed with her national origin and age discrimination claims

because she did not exhaust her administrative remedies.  Plaintiff's complaint contains very

general allegations that Walmart discriminated against her based on "age" and "my national

origin."  (Compl., DE # 4, ¶ 6.)  However, plaintiff's EEOC charge is devoid of any allegations

regarding age or national origin discrimination.  Plaintiff did not check either the "age" or the

"national origin" box on her EEOC charge.  (EEOC charge, DE # 4-2, at 36.)  The charge could

not have alerted the EEOC or Walmart to the possibility of an age or national origin

discrimination claim.  There is also no indication that any age or national origin discrimination

claim is reasonably related to any of the allegations that plaintiff does make in the EEOC charge.

If plaintiff thought that she had been subjected to age and national origin discrimination, she

could have, and should have, said so in her charge.  See Jones, 551 F.3d at 300 ("[A] claim in

formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis,

such as race, and the formal litigation claim alleges discrimination on a separate basis, such as

sex.").  Accordingly, the court does not have subject matter jurisdiction over plaintiff's age

discrimination and national origin discrimination claims.

### 2. Title VII Race Claims

Walmart argues that plaintiff's Title VII race claims should also be dismissed for failure

to exhaust administrative remedies.  Walmart contends that plaintiff's EEOC charge asserts

claims solely under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,

and that the charge does not raise any claims pursuant to Title VII.  The court disagrees with

Walmart's interpretation of the EEOC charge.  In the section of the charge where plaintiff sets

out the particulars of her claims, she does so in three numbered paragraphs.  Plaintiff specifically

invokes the ADA in the third numbered paragraph, but the first and second paragraphs do not

contain a reference to any specific statutory authority.[2]  A liberal construction of the charge leads

---

[2] Plaintiff's statement of particulars provides:

I. I have worked for WAL-MART Stores, Inc. since November 30, 2004, in the position of Sales
Associate.  Between December 9, 2009, and continuing until March 8, 2010, I have been harassed,
and subjected to different terms and conditions.  WAL-MART Stores, Inc. employs more than 15
persons.

II. Ms. Holly (last name and disability unknown) Co-Manager and Ms. Karen Bradshaw, no
known disability, Assistant Manager has continuously reduced my hours.  When I complained to
Ms. Barbara (last name and disability unknown) she told me that due to the economy no hours
were available.

Recently I have not been allowed to have a break, when it is my break time no employee is sent to
relieve me.

To my knowledge, no other employees have been treated as I have.

(continued...)

8

the court to conclude that the first and second paragraphs of the statement of particulars could relate to Title VII. In the first paragraph, plaintiff states that she was "harrassed, and subjected to different terms and conditions," while in the second paragraph, she states that "I have not been allowed to have a break" and that her managers "continuously reduced my hours." (EEOC charge, DE # 4-2, at 36.) Because plaintiff checked the "race" box on her EEOC charge, these allegations would lead a reasonable EEOC investigator to conclude that plaintiff complained about racial discrimination, harassment, and retaliation. As a result, the Title VII race claims will not be dismissed for failure to exhaust administrative remedies.[3]

The court must now consider whether the Title VII race claims are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's complaint makes it difficult to decipher the exact nature of the Title VII race claims that she intends to bring in her lawsuit. Plaintiff herself admits that her pleadings "lack clarity that one might expect." (Pl.'s Mot. Proceed, DE # 14, at 1.) Plaintiff's complaint makes no specific factual allegations whatsoever. Rather, in the section of the complaint form where plaintiff was directed to describe the nature of her complaint, she merely provided a list of exhibits, totaling 66 pages, that she has attached to

---

[2](...continued)
III. I believe I have been discriminated against, based on being regarded as having a disability, and in retaliation for complaining about unlawful acts which is in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

(EEOC charge, DE # 4-2, at 36.)

[3] The court also notes that the right-to-sue letter received by plaintiff appears to indicate that the EEOC construed plaintiff's charge as stating a claim or claims under Title VII. The following printed language was checkmarked in the right-to-sue letter: "The EEOC is closing its file on this charge for the following reason: The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." (Dismissal & Notice of Rights, DE # 4-1, at 1.) If the EEOC had treated the charge as attempting to raise a claim or claims solely under the ADA, the EEOC presumably would have checked the box which states: "Your allegations did not involve a disability as defined by the Americans with Disabilities Act." (Id.)

the complaint. (Compl., DE # 4, ¶ 9.) Many of these documents appear to be completely irrelevant to her claims.

Giving plaintiff every benefit of the doubt, it appears that she is attempting to assert Title VII race claims for disparate treatment, harassment/hostile work environment, and constructive demotion. (See Compl., DE # 4, ¶ 4; EEOC charge, DE # 4-2, at 36; Pl.'s Mot. Proceed, DE # 14, at 4-6, 8-10.) However, all of these claims require plaintiff to show that she is a member of a protected class. See Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 Fed. Appx. 351, 353 (4th Cir. 2009) (discussing disparate treatment); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 612 (E.D.N.C. 2006) (discussing harassment); Cuffee v. Tidewater Cmty. Coll., 409 F. Supp. 2d 709, 718 (E.D. Va.), aff'd, 194 Fed. Appx. 127 (4th Cir. 2006) (discussing constructive demotion).[4] Here, the complaint contains no allegations which show that plaintiff is a member of a protected class. While plaintiff did check the "race" box on her EEOC charge, her complaint is so devoid of factual enhancement that it does not indicate what her race is.[5]

Moreover, even if the court assumes that plaintiff belongs to a racial minority, the complaint fails to allege anything that even remotely suggests a factual basis for her disparate

---

[4] Although it appears that the Fourth Circuit Court of Appeals has not yet directly addressed the question of whether a claim for constructive demotion should be recognized under Title VII, other Courts of Appeal have recognized constructive demotion as a natural extension of constructive discharge, holding that the same standards apply. See Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 717 (8th Cir. 2003); Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 876 (7th Cir. 1999); Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999). Assuming that the Fourth Circuit Court of Appeals would recognize plaintiff's cause of action for constructive demotion, she would be required to show that she is a member of a protected class. See Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) (discussing constructive discharge).

[5] In her response to the motion to dismiss, plaintiff asserts that she stated what her race is on her Walmart job application. (Pl.'s Mot. Proceed, DE # 14, at 11.) Unfortunately, this statement does not assist the court in determining plaintiff's race.

10

treatment, harassment, and constructive demotion claims. For example, the pleadings are completely devoid of allegations that show that anyone at Walmart possessed any racially-motivated animus or acted on the basis of race in making employment decisions that adversely affected plaintiff. See King v. Wilmington Transit Co., 976 F. Supp. 356, 358 (E.D.N.C. 1997), aff'd, 155 F.3d 559 (Table) (4th Cir. 1998) ("To state a claim for relief under Title VII, a plaintiff must allege that he has been treated wrongly because of his race, color, religion, sex, or national origin."). While *pro se* complaints may "represent the work of an untutored hand requiring special judicial solicitude," a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). The "special judicial solicitude" with which a district court should view such *pro se* complaints does not transform the court into an advocate. Id. Plaintiff simply does not meet the basic pleading requirements with respect to these claims and thereby fails to "nudge[] [her] claims across the line from conceivable to plausible . . . ." Twombly, 550 U.S. at 570. As a result, plaintiff has failed to state disparate treatment, harassment, and constructive demotion claims.

Plaintiff also asserts a Title VII race retaliation claim. Title VII's prohibition on retaliation states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To state a Title VII retaliation claim, a plaintiff must allege (1) that she engaged in a protected activity, (2) that the employer acted adversely against her, and (3) that a

causal connection between the protected activity and the adverse action exists. <u>Coleman v. Md.</u>

<u>Ct. of Appeals</u>, 626 F.3d 187, 190-91 (4th Cir. 2010) (applying these elements in the Rule

12(b)(6) context), <u>petition for cert. filed</u>, 79 U.S.L.W. 34380 (U.S. Feb. 8, 2011) (No. 10-1016);

<u>Price v. Thompson</u>, 380 F.3d 209, 212 (4th Cir. 2009).

Under 42 U.S.C. § 2000e-3(a), there are two types of statutorily protected activities that

may form the basis for a retaliation claim. The first type of protected activity is contained in the

"opposition clause," <u>Kubicko v. Ogden Logistics Servs.</u>, 181 F.3d 544, 551 (4th Cir. 1999),

which provides protection to an employee who "has opposed any practice made an unlawful

employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "Opposition activity

encompasses utilizing informal grievance procedures as well as staging informal protests and

voicing one's opinions in order to bring attention to an employer's discriminatory activities."

<u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998).

Here, it appears that plaintiff made many "'suggestions'" to Walmart management prior

to filing a charge with the EEOC, including that the new floor managers go over the employees'

assignments each morning and that any changes to assignments be initialed by management.

(Pl.'s Mot. Proceed, DE # 14, at 4; <u>see</u> <u>also</u> DE # 4-2, at 61-62.) Plaintiff has attached to her

complaint various emails that she sent to Walmart managers and to the corporate office

regarding problems that she was having with her job and making suggestions for change. (DE #

4-2, at 52-62.)[6] "Plaintiff felt that because she was making suggestion[s] for change, [it] resulted

in her hours being cut." (Pl.'s Mot. Proceed, DE # 14, at 9.)

---

[6] Plaintiff has continued to send correspondence of a similar nature to Walmart since the filing of her
complaint in this action. (<u>See</u> Notice Filing Docs. Opp'n Mot. Dismiss, DE ## 20-1, 20-2, 20-6.)

The plain language of Title VII extends protection to an employee's opposition activity when the activity is conducted in response to an actual unlawful employment practice. <u>Jordan v. Alt. Res. Corp.</u>, 458 F.3d 332, 338 (4th Cir. 2006). The Fourth Circuit Court of Appeals has also held that Title VII protects opposition activity that is directed at an employment practice that the employee reasonably believes is discriminatory and unlawful, even though the employment practice may not in fact be unlawful. <u>Id.</u> Because the analysis for determining whether the employee held a reasonable belief that an employment practice is discriminatory and unlawful is an objective one, the court may resolve the issue as a matter of law. <u>Id.</u> at 339.

For plaintiff's internal complaints to constitute protected opposition activity under Title VII, she must have held an objectively reasonable belief in light of all of her circumstances that a Title VII violation had occurred. <u>Id.</u> at 340-41. Here, the emails that plaintiff sent to Walmart management and the corporate office make no mention whatsoever of racial discrimination, harassment, or retaliation. (DE # 4-2, at 52-62.) Thus, the court finds that, based on the facts alleged, no reasonable person could objectively believe that plaintiff's internal complaints were meant to oppose practices made unlawful by Title VII. Although plaintiff may not like certain actions taken by Walmart, Title VII does not protect opposition "to practices the employee simply thinks are somehow unfair." <u>McNair v. Computer Data Sys., Inc.</u>, 172 F.3d 863 (Table), No. 98-1110, 1999 WL 30959, at *5 (4th Cir. Jan. 26, 1999); <u>see</u> <u>also</u> <u>Sajadian v. Am. Red Cross</u>, 202 F.3d 260 (Table), No. 99-1263, 1999 WL 1111455, at *1 (4th Cir. Dec. 7, 1999) (affirming summary judgment for employer on retaliation claim because, "[a]lthough [plaintiff] raised general concerns about her workload, hours, and denial of leave, there is no evidence that either [her employer or the person to whom she complained] was aware that her complaints were

based on an allegation of discrimination"). Accordingly, plaintiff's internal complaints do not constitute a protected activity under the opposition clause of Title VII.

The second type of protected activity under 42 U.S.C. § 2000e-3(a) is contained in the "participation clause," Kubicko, 181 F.3d at 551, which provides protection to an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). It is clear that the filing of plaintiff's EEOC charge constitutes a protected participation activity under 42 U.S.C. § 2000e-3(a).[7] Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998). Employees that engage in participation activities are extended broad protection by Title VII. See Glover v. S.C. Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999). In Glover, the Fourth Circuit Court of Appeals held that the "plain language of the participation clause itself forecloses" the court from requiring that an employee's EEOC charge be objectively reasonable before it can be considered protected activity. Id.; see also Cumbie v. Gen. Shale Brick, Inc., 302 Fed. Appx. 192, 194 (4th Cir. 2008) ("Importantly, when an individual engages in activities constituting participation, such activity is protected conduct regardless of whether that activity is reasonable."). Because plaintiff engaged in a protected activity under the participation clause, the court must further determine whether plaintiff has alleged sufficient facts showing that Walmart took adverse action against her because she filed her EEOC charge and that a causal connection between the protected activity and the adverse action exists.

---

[7] Walmart argues that plaintiff's Title VII retaliation claim relating to the filing of her EEOC charge should be dismissed for failure to exhaust administrative remedies. Walmart's argument is without merit. Retaliation by an employer against an employee for filing a Title VII EEOC charge has been deemed to be reasonably related to the allegations contained in the administrative charge. See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). As a result, a plaintiff "may raise the retaliation claim for the first time in federal court." Id.; see also Jones, 551 F.3d at 303 ("Nealon . . . remains binding precedent.").

Coleman, 626 F.3d at 190; Price, 380 F.3d at 212.

The only allegation that the court could find anywhere in the relevant documents that specifically relates to this claim is contained in plaintiff's response to the motion to dismiss. Plaintiff alleges that "after filing the complaint with the EEOC and the U.S. District Court, an additional department was added to her work load, plus part of another department." (Pl.'s Mot. Proceed, DE # 14, at 5.) Even if the court assumes that adding responsibilities to plaintiff's workload constitutes an "adverse employment action" for the purposes of Title VII, Coleman, 626 F.3d at 190, plaintiff's meager allegation is simply insufficient to state a claim. Plaintiff alleges absolutely no facts to show that a causal nexus exists between her EEOC charge and Walmart's alleged conduct. For example, plaintiff does not state when her workload was actually increased. She also does not identify the person who increased her workload or whether that person was aware that she had filed an EEOC charge. See Dowe, 145 F.3d at 655-57 (plaintiff could not establish causal connection with respect to her Title VII retaliation claim because it was undisputed that the relevant decisionmaker was unaware of the protected activity, even though others who worked for the employer had learned of the plaintiff's EEOC complaint). Moreover, she fails to specify which departments were added to her workload or what additional responsibilities were assigned to her.

Although plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, her "'[f]actual allegations must be enough to raise a right to relief above the speculative level." Coleman, 626 F.3d at 190 (alteration in original) (quoting Twombly, 550 U.S. at 555); see also Bass, 324 F.3d at 764-65. Here, plaintiff has not given Walmart "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly,

550 U.S. at 555 (alteration in original) (citation and internal quotation marks omitted).

Accordingly, plaintiff's Title VII retaliation claim relating to the filing of her EEOC charge must

be dismissed.

3. Disability Claims

In her EEOC charge, plaintiff states: "I believe I have been discriminated against, based

on being regarded as having a disability, and in retaliation for complaining about unlawful acts

which is in violation of Title I of the Americans with Disabilities Act of 1990, as amended."

(EEOC charge, DE # 4-2, at 36.)  In contrast, plaintiff does not mention the ADA anywhere in

her complaint.  Rather, Title VII is asserted as the sole basis for the claims in the complaint.  As

a result, Walmart argues that "the scope of Plaintiff's Complaint exceeds the limits set by the

allegations in Plaintiff's EEOC charge" and that plaintiff's disability claims should be dismissed

for failure to exhaust administrative remedies.  (Mem. Supp. Mot. Dismiss, DE # 12, at 5-6.)

The court agrees with Walmart that plaintiff's complaint ideally should have referred to

the ADA as the basis for her disability claims.  However, plaintiff does make a general allegation

in paragraph six of the complaint that Walmart discriminated against her based on "[d]isability."

(Compl., DE # 4, ¶ 6.)   Furthermore, as previously mentioned, plaintiff's complaint is a form

containing typewritten allegations in a fill-in-the-blank format, which was supplemented with

handwritten information by plaintiff.  Here, plaintiff did not fill in the statutory basis for her

claims on her own; rather, the typewritten form language contained in paragraph three of the

complaint states: "This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for

employment discrimination."  (Compl., DE # 4, ¶ 3.)  As a result, it appears that plaintiff

intended to assert claims under the ADA in her complaint but failed to adapt the standardized

form to the particulars of her claims. Although the complaint is not crystal clear with respect to the statutory basis for the disability claims, plaintiff has given Walmart adequate notice of the nature of her claims, particularly where the claims were plainly articulated in the EEOC charge. Because the court has a duty to construe *pro se* pleadings liberally, see Haines, 404 U.S. at 520, and because Walmart had adequate notice of plaintiff's claims, the court will not dismiss the disability claims for failure to exhaust administrative remedies.

The court will now consider whether plaintiff's disability claims are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff alleges that she suffered discrimination prohibited under the ADA. The ADA provides in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). To avail herself of the protections of the ADA, plaintiff must first demonstrate that she suffers from a disability. See id.; EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000) (setting out prima facie elements of ADA disability discrimination claim). The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1).[8] Here, the complaint merely states that Walmart's conduct is discriminatory

---

[8] The current version of the ADA incorporates the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553 (2008). The ADAAA, which became effective on 1 January 2009, id. at 3559, applies to this case because plaintiff alleges that Walmart began to discriminate against her beginning in December 2009. (Compl., DE # 4, ¶ 8; EEOC charge, DE # 4-2, at 36.) In the ADAAA, Congress mandated that the definition of disability is to be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted" by the law. 42 U.S.C. § 12102(4)(A).

(continued...)

with respect to "[d]isability" (Compl. DE # 4, ¶ 6), while plaintiff's EEOC charge indicates that she was discriminated against "based on being regarded as having a disability[.]" (EEOC charge, DE # 4-2, at 36; <u>see also</u> Pl.'s Mot. Proceed, DE # 14, at 11.) Thus, it is unclear whether plaintiff is claiming that she has an actual disability or whether she is claiming that Walmart perceives her as being disabled. As a result, the court will consider both possible claims.

Here, plaintiff has failed to allege facts which show that she suffers from an actual disability. <u>See</u> 42 U.S.C. § 12102(1)(A). Despite the large number of documents that plaintiff has filed in this case, the court is unable to determine the nature of plaintiff's disability. Several of the documents attached to the complaint relate to plaintiff's attempt to request a medical leave of absence from Walmart. It appears that the leave of absence was requested due to plaintiff's "[i]mmediate need [for] dental care." (DE # 4-2, at 18; <u>see also</u> <u>id.</u> at 7, 9-10.) However, the specific nature of plaintiff's condition cannot be discerned from the documents.

Furthermore, in her response to Walmart's motion to dismiss, plaintiff states that Walmart's actions led to

> an exacerabation [sic] of hypertension, back injury(s) [sic] that had . . . been in remission for the past seven years. The plaintiff has a history of bowel problems,

---

[8](...continued)
Although the ADAAA left the ADA's three-category definition of 'disability' intact, significant changes were made regarding how these categories are to be interpreted. For example, with respect to the definition of actual disability found in 42 U.S.C. § 12102(1)(A), the ADAAA expanded the list of 'major life activities.' As a result, examples of 'major life activities' now include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.' 42 U.S.C. § 12102(2)(A). In addition, Congress instructed that the term 'substantially limits,' which is also found in 42 U.S.C. § 12102(1)(A), 'shall be interpreted consistently with the findings and purposes of the [ADAAA]' 42 U.S.C. § 12102(4)(B).

<u>Feldman v. Law Enforcement Assocs. Corp.</u>, – F. Supp. 2d –, No. 5:10-CV-08-BR, 2011 WL 891447, at *6 (E.D.N.C. Mar. 10, 2011) (alteration in original). The court has taken the broad coverage of the ADAAA into account in ruling on Walmart's motion to dismiss.

that was, over time, made worse. She also suffered exacerbation of her old left
shoulder injury. The right shoulder is beginning to experience pain. The plaintiff
plans to int[r]oduce into court an application filed with the Social Security
Disability [Administration] that addresses her medical condition in more detail.

(Pl.'s Mot. Proceed, DE # 14, at 5.) Plaintiff attached a copy of a Social Security "Disability

Report - Adult" dated 2 December 2010 to her response to the motion to dismiss. (Id., DE # 14-

1, at 4-17.) In section 3.A of the disability report, plaintiff was directed to list the physical

conditions that limit her ability to work. Plaintiff listed "Back Injury" and "HX HTN." (DE #

14-1, at 5; see also id. at 8.) The context of the rest of the report leads the court to conclude that

"HX" is an abbreviation for history and that "HTN" is an abbreviation for hypertension.[9]

Aside from these extremely brief descriptions of the physical conditions that allegedly

limit her ability to work, plaintiff provides practically no details about her impairment. The

court has no further information on the severity or type of plaintiff's medical limitations.

Plaintiff describes her condition with so few details that the court cannot infer whether the

activity limited by plaintiff's impairment is a major life activity or whether plaintiff's

impairment substantially limits a major life activity.[10] Thus, plaintiff has alleged no facts from

which the court can conclude that she has the requisite disability to qualify her for relief under

---

[9] The disability report also indicates that plaintiff is taking lisinopril for her hypertension. (DE # 14-1, at
8.) Furthermore, plaintiff is treating her hypertension, back pain, and neck pain with aspirin, Tylenol, herbal tea,
herbal supplements, and a "TENS" unit. (Id.)

[10] In fact, plaintiff's own evidence appears to indicate that her physical conditions do not limit her ability to
work. On page 11 of the disability report, in the section where plaintiff was instructed to provide any additional
information that she did not give in earlier parts of the report, she states:

I have been doing much better and working full times [sic]. I have experience[d] 'financial
difficulties' after the exhasterbating [sic] of my hypertension, back and neck injur[ies]. However,
I am functioning in my full time job and conducting my self-employment business. I filed for
Social Security to silence the community who were told I was dying.

(DE # 14-1, at 15.)

19

42 U.S.C. § 12102(1)(A).

The court will now consider whether plaintiff has alleged sufficient facts to show that she was "regarded as" having a disability. 42 U.S.C. § 12102(1)(C). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Here, other than the conclusory statement contained in the EEOC charge which states that plaintiff was "discriminated against, based on being regarded as having a disability" (EEOC charge, DE # 4-2, at 36), there are simply no facts in any of plaintiff's pleadings which show that anyone at Walmart regarded her as having an actual or perceived impairment or that anyone at Walmart subjected her to action that is unlawful under the ADA because of such an impairment. As a result, plaintiff cannot establish that a disability existed under 42 U.S.C. § 12102(1)(C). Accordingly, even under the most liberal pleading standard, plaintiff has failed to state a claim for discrimination under the ADA.

Plaintiff also makes a retaliation claim under the ADA. "Title V of the ADA governs claims for retaliation." Shepard v. Irving, 77 Fed. Appx. 615, 622 (4th Cir. 2003). Title V states in pertinent part:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). By its plain language, this provision of the ADA does not require that the claimant be disabled. Rhoads v. FDIC, 257 F.3d 373, 391 (4th Cir. 2001). In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct

protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) (applying these elements in the Rule 12(b)(6) context); Rhoads, 257 F.3d at 392.

In reviewing a claim under the ADA opposition clause, "[a] plaintiff need not establish that the conduct she opposed actually constituted an ADA violation. But a complainant must allege the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA." Freilich, 313 F.3d at 216 (citations omitted).

Here, plaintiff's retaliation claims under the ADA fail for the same reasons that her Title VII retaliation claims fail. Plaintiff has not alleged any set of facts to support a claim that she had a reasonable, good faith belief that the conduct she opposed actually constituted an ADA violation, particularly where the emails that plaintiff sent to Walmart management and the corporate office make no mention whatsoever of the ADA or any violations thereof. (DE # 4-2, at 52-62.) In addition, plaintiff has not sufficiently stated a claim under the ADA participation clause because she alleges absolutely no facts to show that a causal nexus exists between her EEOC charge and Walmart's alleged conduct. See Section II.C.2., supra. The court concludes that plaintiff has failed to state any claim upon which relief can be granted in this case.

Although plaintiff has not moved to amend her complaint, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1108 (9th Cir. 2003) ("[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." (alteration in original) (citation and internal quotation marks omitted)); Threat v. Potter, No. 3:05CV116, 2006

WL 1582393, at *1 (W.D.N.C. June 2, 2006) ("Dismissal of the Complaint could be warranted under these circumstances. However, in its discretion, the Court finds that allowing the Plaintiff to amend her Complaint to correct these deficiencies is a wiser course than to order a dismissal at this early stage of the action."). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Under Federal Rule of Civil Procedure 15(a), "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." <u>Id.</u> (citation and internal quotation marks omitted).

Here, the court will allow plaintiff to file an amended complaint within 15 days of the date of this order. Because plaintiff has failed to exhaust her administrative remedies with respect to her national origin and age discrimination claims, she may not pursue these claims in her amended complaint. The only claims remaining before the court are plaintiff's Title VII claims relating to her race and her discrimination and retaliation claims under the ADA. If plaintiff chooses to file an amended complaint, she should identify the legal and factual bases for her claims so that Walmart will be put on fair notice of the nature of the claims. She should also exclude any matters that are not directly related to her claims. Furthermore, if plaintiff files an amended complaint, it must be a complete document in and of itself; that is, it must not incorporate the original complaint by reference or any of the other documents that plaintiff has previously filed in this case. Because the court is allowing plaintiff to amend her complaint, Walmart's motion to dismiss will be denied without prejudice.

## III. CONCLUSION

Plaintiff's 16 December 2010 and 4 February 2011 motions (DE ## 14, 21) are DENIED.

Plaintiff is ALLOWED to file an amended complaint, as outlined above, within 15 days of the

date of this order. Walmart's motion to dismiss the complaint (DE # 11) is DENIED WITHOUT

PREJUDICE. Walmart may file another motion to dismiss if plaintiff submits an amended

complaint or may renew its original motion to dismiss if plaintiff does not file an amended

complaint in accordance with this order.

This 12 May 2011.


_____

W. Earl Britt
Senior U.S. District Judge