UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CV-171-BR

| ELLA L. GRAY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| WALMART STORES, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

This matter is before the court on the 31 May 2011 motion to amend filed by plaintiff Ella L. Gray ("plaintiff") and on the 28 June 2011 motion to dismiss filed by defendant Walmart Stores, Inc. ("Walmart").[1] The period to respond and reply to these motions has elapsed, and the matters are now ripe for disposition.

## I. BACKGROUND

Plaintiff is a current employee of Walmart Store # 1392 in Wilmington, North Carolina. On 2 September 2010, plaintiff commenced this action by filing a motion to proceed *in forma pauperis*, and she attached her complaint to the motion. On 8 December 2010, Walmart filed a motion to dismiss the complaint. (DE # 11.)

The court construed plaintiff's original complaint as asserting claims for national origin discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; race discrimination and retaliation pursuant to Title VII; and disability

---

[1] Walmart states that the complaint improperly identifies Walmart Stores, Inc. as the defendant in this lawsuit. The appropriate entity in this action is Wal-Mart Stores East, L.P., which is the operating entity for the store at issue in this case, *i.e.*, Walmart Store # 1392 in Wilmington, North Carolina. (Mem. Supp. Mot. Dismiss, DE # 31, at 1 n.1.)

discrimination and retaliation pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Although the court determined that plaintiff's complaint was deficient in a number of ways, the court denied Walmart's motion to dismiss and allowed plaintiff to file an amended complaint. (5/12/11 Order, DE # 26, at 22.) Because plaintiff could not remedy her failure to exhaust her administrative remedies with respect to her national origin and age discrimination claims, the court prohibited plaintiff from pursuing those claims in her amended complaint. (Id.)

On 31 May 2011, plaintiff filed a document that was docketed as a motion to amend the complaint. (DE # 27.) On 28 June 2011, Walmart elected to treat plaintiff's 31 May 2011 filing as an amended complaint and filed another motion for dismissal. (DE # 30.) Plaintiff filed a response to Walmart's motion to dismiss on 20 July 2011. (DE # 33.) Walmart did not file a reply.

## II. DISCUSSION

A.  Plaintiff's Motion to Amend

Plaintiff is proceeding *pro se*. Pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520 (1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. See id.; Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Although plaintiff refers to her 31 May 2011 filing as a "motion" several times within the document (see DE # 27 at 7, 9), the court agrees with WalMart that the document appears to be an amended

complaint rather than a motion for leave to amend.[2]  Thus, the court will treat the document as the amended complaint that plaintiff was given leave to file pursuant to the court's 12 May 2011 order.  Plaintiff's amended complaint supercedes the original complaint.  See Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." (citation and internal quotation marks omitted)).

B.      Walmart's Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of the allegations in the complaint.  In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  Although plausibility does not entail probability, the facts in the complaint must establish more than the mere possibility that a defendant acted unlawfully.  Id.  In considering whether the plaintiff has established a plausible claim for relief, this court is bound to accept the well-pleaded facts of the complaint as true; however, conclusory assertions of law or fact are not entitled to the assumption of truth.  Id. at 1949-50; see also Nemet Chevrolet, Ltd.

---

[2] The court notes that plaintiff's response to Walmart's motion to dismiss also seems to indicate that her 31 May 2011 filing was intended to be an amended complaint.  (See Pl.'s Resp. Def.'s Mot. Dismiss, DE # 33, at 1 ("As requested by the courts, plaintiff, pro se litigant, amended her complaint as directed by the court.").)

3

v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009). In sum, "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a [plausible] claim for relief." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (emphasis in original).

As the court noted in its order on Walmart's prior motion to dismiss, "[t]his case presents many of the problems that are typical with *pro se* litigants. Plaintiff struggles to set forth 'a short and plain statement' of her claims showing that she is entitled to some form of relief. Fed. R. Civ. P. 8(a)(2)." (5/12/11 Order, DE # 26, at 5.) Here, plaintiff's amended complaint suffers from many of the same defects that were present in her original complaint.

 1. Discrimination claims

As with her original complaint, plaintiff appears to be asserting a Title VII race discrimination claim in her amended complaint. Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (applying these elements in the Rule 12(b)(6) context), cert. granted, 131 S. Ct. 3059 (U.S. June 27, 2011) (No. 10-1016); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

A key element that plaintiff must allege is that she suffered an "adverse employment action." See Coleman, 626 F.3d at 190; White, 375 F.3d at 295. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir.

4

2007) (alteration in original) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). While "[c]onduct short of ultimate employment decisions can constitute adverse employment action," Booz-Allen, 368 F.3d at 375-76 (citation and internal quotation marks omitted), the "typical requirements for a showing of an 'adverse employment action'" are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion . . . ." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999); see also Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (stating that inquiries into adverse employment actions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation). The Fourth Circuit Court of Appeals has also held that a reassignment constitutes an adverse employment action only if the reassignment has a "significant detrimental effect" on the plaintiff. Boone, 178 F.3d at 256. "The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." Booz-Allen, 368 F.3d at 376.

Here, plaintiff alleges that Walmart took the following actions against her: (1) Walmart "allowed assignments to be made that denied plaintiff her legal right to work in the job that she agreed to" (Am. Compl., DE # 27, at 3); (2) Walmart repeatedly pulled plaintiff to work in other departments and had her complete work that other associates and her supervisor failed to complete (id.; see also id. at 5, 7); (3) Walmart "separated [plaintiff] from the salesfloor" and did not invite her to participate in "the functions of the unit," such as retirement, Christmas, and Halloween parties, until the day of the event (id. at 4); (5) Walmart hired two new white employees to work the day shift in plaintiff's unit, but Walmart would not approve plaintiff's

5

request to be assigned to the day shift (id. at 5);[3] and (6) Walmart issued plaintiff a verbal reprimand, which affected her ability to be promoted (id. at 7).

The court finds that these allegations are insufficient to demonstrate that plaintiff suffered an adverse employment action. Plaintiff claims that the verbal reprimand "affected [her] ability to be promoted in the company" (id.), but this statement appears to be pure speculation on her part. The amended complaint contains absolutely no allegations which demonstrate that plaintiff has applied for a promotion during her employment with Walmart. If plaintiff did apply for a promotion, then she should have been able to identify the specific promotion for which she applied, the date when her application was rejected, and the person selected for the position. See, e.g., Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555; Coleman, 626 F.3d at 190. As for plaintiff's other allegations regarding the assignment of additional job responsibilities, exclusion from party preparations that were not related to her job duties, and the denial of her request to be reassigned to the day shift, these are best defined as "trivial discomforts endemic to employment." Boone, 178 F.3d at 256. Plaintiff fails to make any allegations to show that Walmart's actions have had a "significant detrimental effect" on her. Id.; see Holland, 487 F.3d at 219 (speculation about future adverse consequences of a reassignment does not constitute an adverse employment action). Because plaintiff does not allege an adverse employment action, she fails to assert a plausible claim for race discrimination.

Furthermore, even if plaintiff had suffered an adverse employment action, she fails to

---

[3] Although plaintiff alleges that her request to be reassigned to the day shift was "never approved" (Am. Compl., DE # 27, at 5), she contradicts herself later on in the amended complaint when she states that "[p]laintiff has been changed from a day shift position to a 10pm-7am shift for six months at her request." (Id. at 7.) Thus, even though it appears that plaintiff was eventually assigned to the day shift, the court has given plaintiff every benefit of the doubt and has considered the allegations regarding her request for a schedule change in determining the adequacy of her race discrimination claim.

6

allege facts sufficient to support a reasonable inference that Walmart took such action against her based on her race. See Carpenter v. Cnty. Sch. Bd., 107 Fed. Appx. 351, 351-52 (4th Cir. 2004) ("We find [the plaintiff] failed to allege sufficient facts in support of his [discrimination] claim to defeat a motion to dismiss. [The plaintiff] did nothing more than state that he was in a protected class and that he suffered adverse employment decisions."); Autry v. N.C. Dept. of Human Res., 820 F.2d 1384, 1386 (4th Cir. 1987) ("In order to establish a case of race discrimination, . . . Plaintiff would have to be able to show a connection between her race and her failure to be promoted. In other words, she would have to show that she was not promoted because of her race, not that she was a member of the black race and was not promoted." (emphasis in original)); King v. Wilmington Transit Co., 976 F. Supp. 356, 358 (E.D.N.C. 1997) ("To state a claim for relief under Title VII, a plaintiff must allege that he has been treated wrongly because of his race, color, religion, sex, or national origin."), aff'd, 155 F.3d 559 (Table) (4th Cir. 1998). For example, the amended complaint is completely devoid of allegations that show that anyone at Walmart possessed any racially-motivated animus or acted on the basis of race in making employment decisions that adversely affected plaintiff. As a result, plaintiff's Title VII race discrimination claim must be dismissed.

Plaintiff also asserts a disability discrimination claim under the ADA. Absent direct evidence, plaintiff must initially demonstrate a *prima facie* case by showing that: (1) she is within the ADA's protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. See, e.g., EEOC v. Stowe-Pharr

Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000); Williams v. Brunswick Cnty. Bd. of Educ., 725 F. Supp. 2d 538, 543 (E.D.N.C. 2010), aff'd, — F.3d —, No. 10-1884, 2011 WL 2938073 (4th Cir. July 22, 2011). Here, plaintiff's disability discrimination claim fails for the same reasons as her race discrimination claim, *i.e.*, that she has failed to plead an adverse employment action and that she has also failed to plead that the actions taken against her occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. See discussion, supra, at 5-7. Accordingly, the court will dismiss plaintiff's disability discrimination claim.

2. Retaliation claims

Plaintiff also asserts retaliation claims pursuant to Title VII and the ADA. Title VII's prohibition on retaliation states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To state a Title VII retaliation claim, a plaintiff must allege (1) that she engaged in a protected activity, (2) that the employer acted adversely against her, and (3) that a causal connection between the protected activity and the adverse action exists. Coleman, 626 F.3d at 190 (applying these elements in the Rule 12(b)(6) context); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).

Under 42 U.S.C. § 2000e-3(a), there are two types of statutorily protected activities that may form the basis for a retaliation claim. The first type of protected activity is contained in the "opposition clause," Kubicko v. Ogden Logistics Services, 181 F.3d 544, 551 (4th Cir. 1999), which provides protection to an employee who "has opposed any practice made an unlawful

8

employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).

As she did in her original complaint, plaintiff again alleges in her amended complaint that she complained to Walmart management that "she was being treated differently than the other associates." (Am. Compl., DE # 27, at 3.) In support of this claim, plaintiff references documents that she attached to her original complaint.[4] (Id.; DE # 4-2, at 52-62.) The court has already determined that these internal complaints are insufficient to constitute protected opposition activity under Title VII. (See 5/12/11 Order, DE # 26, at 12-13.) The emails that plaintiff sent to Walmart management and the corporate office make no mention whatsoever of racial discrimination or retaliation, and thus, no reasonable person could objectively believe that plaintiff's internal complaints were meant to oppose practices made unlawful by Title VII.[5] See Jordan v. Alt. Res. Corp., 458 F.3d 332, 338-39 (4th Cir. 2006).

---

[4] These documents are not attached to the amended complaint. The court is aware that plaintiff's amended complaint supercedes her original complaint and renders the original complaint of no legal effect. See Young, 238 F.3d at 572. However, the court "is not limited to the four corners" of the amended complaint in ruling on Walmart's motion to dismiss. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). The matters which a court may consider on a Rule 12(b)(6) motion include documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned. See id.; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396-97 (4th Cir. 2006); In re FAC Realty Sec. Litig., 990 F. Supp. 416, 420 (E.D.N.C. 1997). Because plaintiff's internal complaints are part of the record in this case and because plaintiff specifically references these documents in her amended complaint, the court has reconsidered the documents in ruling on Walmart's motion to dismiss.

[5] Plaintiff's own allegations indicate that she did not inform Walmart that she was being treated differently because of her race. Plaintiff states that Walmart was "constantly being made aware that she was the only employee being pulled repeatly [sic] to other departments, and to return and have to do the work that the associates left in the unit did not do." (Am. Compl., DE # 27, at 3.) These complaints about plaintiff's workload have absolutely no connection to any alleged racial discrimination.

9

The second type of protected activity under 42 U.S.C. § 2000e-3(a) is contained in the "participation clause," Kubicko, 181 F.3d at 551, which provides protection to an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). It is clear that the filing of plaintiff's EEOC charge (DE # 4-2, at 36) constitutes a protected participation activity under 42 U.S.C. § 2000e-3(a). Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998). Because plaintiff engaged in a protected activity under the participation clause, the court must further determine whether plaintiff has alleged sufficient facts showing that Walmart took adverse action against her because she filed her EEOC charge and that a causal connection between the protected activity and the adverse action exists. Coleman, 626 F.3d at 190; Price, 380 F.3d at 212.

In the amended complaint, plaintiff alleges that "[i]t was after this [EEOC] charge that two white females were hired that resul[t]ed in [plaintiff], as an African American, to be forced to spend a considerable amount of time in the back of the processing area or at the back door of the 'Garden Center' as a door greeter. The new associates hired for her unit was [sic] rarely sent to the door." (Am. Compl., DE # 27, at 3.)[6] Even if the court assumes that this change in job responsibilities constitutes an "adverse employment action" in the retaliation context, see Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68-69 (2006), plaintiff's meager allegations are simply insufficient to state a claim. Plaintiff alleges absolutely no facts to show that a causal nexus exists between her EEOC charge and Walmart's alleged conduct. For

---

[6] Plaintiff also alleges that the two new associates were assigned to the day shift even though plaintiff had previously submitted several requests to be moved to the day shift. (Am. Compl., DE # 27, at 5.) Furthermore, plaintiff asserts that after an unspecified amount of time, she was asked "to do the work that the new associates were not doing . . . ." (Id.)

10

example, plaintiff does not indicate when the new employees were hired. See Dowe, 145 F.3d at 657 ("This Court has held that evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden of making a prima facie case of causa[tion].'" (citation omitted) (emphasis and alterations in original).) Furthermore, she does not specifically identify who forced her to spend time in the back of the processing area and at the back door of the Garden Center[7] or whether that person was aware that she had filed an EEOC charge. See id. at 655-57 (plaintiff could not establish causal connection with respect to her Title VII retaliation claim because it was undisputed that the relevant decisionmaker was unaware of the protected activity, even though others who worked for the employer had learned of the plaintiff's EEOC complaint). There are simply no allegations in the amended complaint which demonstrate that anyone at Walmart harbored any animosity toward plaintiff as a result of her protected activity or that the filing of plaintiff's EEOC charge was subsequently used as a basis for an adverse decision about her employment. Cf. Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007) ("In cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." (citation and internal quotation marks omitted)).

Although plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, her "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Coleman, 626 F.3d at 190 (alteration in original) (quoting

---

[7] Plaintiff indicates that she "asked the supervisor of the door and Garden Center why the new associates were left in the unit and she was pulled repeatly [sic]." (Am. Compl., DE # 27, at 3.) However, she does not state whether this was the supervisor that repeatedly pulled her from her unit. Plaintiff also mentions supervisors named "Jo and Betty," but she fails to allege that either one of them pulled her from her regular department. (Id.)

11

Twombly, 550 U.S. at 555); see also Bass, 324 F.3d at 764-65. Here, plaintiff has not given Walmart "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (alteration in original) (citation and internal quotation marks omitted). Accordingly, plaintiff's Title VII retaliation claims must be dismissed.

Plaintiff also makes a retaliation claim under the ADA. In order to establish a *prima facie* case of retaliation under the ADA, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) (applying these elements in the Rule 12(b)(6) context); Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir. 2001). Here, plaintiff's retaliation claims under the ADA fail for the same reasons that her Title VII retaliation claims fail. See discussion, supra, at 8-11. With respect to her ADA opposition clause claim, plaintiff has not alleged any set of facts to support a claim that she had a reasonable, good faith belief that the conduct she opposed actually constituted an ADA violation, particularly where the complaints that plaintiff sent to Walmart management and the corporate office make no mention whatsoever of the ADA or any violations thereof. (DE # 4-2, at 52-62.) In addition, as with her retaliation claim under the participation clause of Title VII, plaintiff has not stated a claim under the ADA participation clause because she alleges absolutely no facts to show that a causal nexus exists between her EEOC charge and Walmart's alleged conduct. The court concludes that plaintiff has failed to state a retaliation claim under the ADA.[8]

---

[8] Furthermore, to the extent that plaintiff is trying to assert a claim for failure to accommodate under the ADA (see Am. Compl., DE # 27, at 8), the court finds that plaintiff has failed to adequately plead such a claim. In a failure to accommodate case, a plaintiff establishes a *prima facie* case by showing (1) that she was an individual who

(continued...)

12

### 3. Hostile work environment claims

Plaintiff also appears to allege in her amended complaint that Walmart subjected her to a hostile work environment. To establish such a claim, plaintiff must demonstrate that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on a protected status; (3) the harassment affected a term, condition, or privilege of employment and (4) some factual basis exists to impute liability for the harassment to the employer. See, e.g., Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006) (discussing claim under Title VII); Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001) (discussing claim under the ADA); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 612 (E.D.N.C. 2006) (discussing claim under Title VII).

Here, plaintiff complains that she was offended by the phrase "'No Home'" that was allegedly written on several freight boxes on different occasions. (Am. Compl., DE # 27, at 7.) Plaintiff alleges that the writing "appear[ed]" to be her supervisor's handwriting. (Id.) This supervisor also allegedly said that plaintiff was "'just there.'" (Id.; see also id. at 4 (supervisor told plaintiff – "'your [sic] just here'").) Plaintiff asserts that this conduct made her "aware that she was not a part of the regular staff." (Id. at 4.) However, plaintiff's amended complaint fails to describe how this conduct was motivated by her race or disability and fails to describe any

---

[8](...continued)
had a disability within the meaning of the ADA; (2) that the employer had notice of her disability; (3) that with reasonable accommodation, she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. Haneke v. Mid-Atlantic Capital Mgmt., 131 Fed. Appx. 399, 400 (4th Cir. 2005); Rhoads, 257 F.3d at 387 n.11. Here, plaintiff has completely failed to plead that Walmart refused to accommodate her. In fact, she states that "[t]he defendant has offered to make reasonable accommodations if necessary." (Am. Compl., DE # 27, at 8.)
    In addition, to the extent that plaintiff is attempting to raise a Title VII or ADA claim for constructive discharge (see Am. Compl., DE # 27, at 7, 9), the claims are without merit because the record indisputably establishes that plaintiff is a current Walmart associate. See Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999) (To constitute constructive discharge, an employee "must actually quit.").

13

conduct that is sufficiently severe or pervasive so as to alter the terms or conditions of her employment. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (recognizing in the context of a sexual harassment claim that the law does not establish "a general civility code" nor does it "prohibit all verbal or physical harassment in the workplace"); Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (finding that there was no indication that any of the harassing incidents complained of were the result of plaintiff's supervisors' animosity toward his race). Absent allegations of harassment based on plaintiff's race or disability, a generalized job grievance is not sufficient to state a claim. See Baqir, 434 F.3d at 747 (stating that complaints of rude treatment were insufficient to sustain a hostile work environment claim). Plaintiff also fails to allege that Walmart had notice of any alleged wrongful conduct. Accordingly, plaintiff has failed to state a hostile work environment claim under Title VII or the ADA.[9]

4. Chemical exposure

In several places in her amended complaint, plaintiff refers to the fact that Walmart allegedly exposed her to chemicals. For example, she states that she "was assigned by management to the unit that required increased exposure to the area of chemic[als] in question[]." (Am. Compl., DE # 27, at 3.) She further asserts that she "was repeatly [sic] subjected to the [chemical] environment in a[] discriminatory and retali[a]tory manner that prompted her to seek the assistance of the [Social Security Administration]." (Id. at 2.) Among

---

[9] Plaintiff also appears to base her hostile work environment claim upon the actions of entities who are not parties to this case, *i.e.*, actions by Merrill Lynch and Extended Stay America in Wilmington, North Carolina. (Am. Compl., DE # 27, at 8-9.) Plaintiff does not allege any legal basis for holding Walmart liable for the actions of these unrelated entities. As a result, plaintiff fails to state a claim upon which relief can be granted with respect to this third party conduct.

14

other things, plaintiff states that she "plans to show that defendant knew that such an environment could cause an illness[] that would place plaintiff's health at risk and cause her to have to resign from her job for medical reasons." (Id.; see also id. at 6 (Plaintiff "plans to show the relationship of repeated, unnecessary exposure to the environment, and it[s] ability to cause physical harm and financial harm to plaintiff was intentional.").) If the court gives plaintiff every benefit of the doubt and assumes that she is attempting to claim that she has been "disabled" by exposure to chemicals during her employment with Walmart, these allegations are insufficient to demonstrate that Walmart discriminated against her on the basis of a disability in violation of the ADA. Her allegations do not reveal that Walmart took any adverse employment action against her based on an actual or perceived disability. See Fox, 247 F.3d at 177.

At most, the harm that plaintiff suffered as a result of her alleged exposure to chemicals sounds in state law as a claim of employer intentional tort. See, e.g., Blow v. DSM Pharm., Inc., 678 S.E.2d 245, 248-49 (N.C. Ct. App. 2009), disc. review denied, 693 S.E.2d 917 (N.C. 2010). However, such claims are allowed "only in the most egregious cases of employer misconduct." Id. at 248. Here, it is clear that plaintiff's amended complaint fails to "cobble together" the necessary allegations for such a claim.[10] Id. at 249.

Having considered all of the claims that plaintiff could possibly be attempting to raise in her amended complaint, the court concludes that she has failed to state a claim upon which relief can be granted. As a result, the court will allow Walmart's motion to dismiss the complaint.

### III. CONCLUSION

---

[10] Plaintiff is required to allege: "(1) misconduct by the employer; (2) intentionally engaged in; (3) with the knowledge that the misconduct is substantially certain to cause serious injury or death to an employee; and (4) that employee is injured as a consequence of the misconduct." Blow, 678 S.E.2d at 248-49.

Plaintiff's Motion to Amend (DE # 27) is DENIED AS MOOT. Under the circumstances, plaintiff did not need permission from the court before filing her amended complaint. The Clerk is DIRECTED to re-file Docket Entry No. 27 as an amended complaint with an effective filing date of 31 May 2011. Walmart's motion to dismiss the complaint (DE # 30) is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Walmart and close the case.

This 19 September 2011.

						_____
						W. Earl Britt
						Senior U.S. District Judge

16

Case 7:10-cv-00171-BR   Document 34   Filed 09/19/11   Page 16 of 16